Donald BISH, Donald Conrad and Steven Botchuck, Appellants,

v.

STATE of Indiana, Appellee.

No. 479S89.

Supreme Court of Indiana.

June 10, 1981.

Rehearings Denied August 10, 1981.

Harriette Bailey Conn, Public Defender, Marcia L. Dumond, Deputy Public Defender, Indianapolis, Garrett N. Wyss, New Haven, R. Steven Hearn and Timothy D. Blue, Rasor, Harris, Lemon & Reed, Warsaw, for appellants.

Theodore L. Sendak, Atty. Gen., George B. Huff, Jr., Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

This case presents the consolidated appeals of Donald Bish, Donald Conrad and Steven Botchuck. Appellants Bish, Conrad and Botchuck were charged in Noble Circuit Court with various offenses stemming from the abduction, sexual assault and robbery of a young woman. All three defendants were charged with class B confinement, Ind.Code § 35–42–3–3 (Burns 1979 Repl.); class A unlawful deviate conduct, § 35–42–4–2; and class B robbery, § 35–42–5–1. In addition, Bish and Botchuck were charged with class A rape, § 35–42–4–1, and Botchuck and Conrad were each charged with being an habitual criminal, § 35–50–2–8. On the day their jury trial was to begin, the three defendants entered into negotiated plea agreements with the prosecutor. Pursuant to these agreements, each entered guilty pleas to the following charges: class D confinement; class B unlawful deviate conduct; class B rape; and class B robbery. The prosecutor then dismissed the habitual criminal pleadings against Conrad and Botchuck.

Following the submission of these plea agreements, the trial court examined each defendant to determine that he was knowingly, voluntarily, and intelligently entering these pleas. The defendants were fully advised of their rights, and none makes any claim in his appeal that his guilty pleas were not properly made. In addition, the trial court properly established the requisite factual basis before accepting the pleas. The plea agreements contained no arrangements concerning the sentences to be imposed, and, after receiving the defendants' guilty pleas, the trial court conducted a sentencing hearing and then sentenced Bish, Conrad and Botchuck accordingly.

Pursuant to the defendants' guilty pleas and the facts and circumstances revealed at the sentencing hearing, the trial court imposed the following sentences: each defendant received a four-year sentence for the confinement and twenty-year term on the deviate conduct charge; Botchuck and Conrad received twenty-year terms for robbery; finally, Bish and Botchuck were each sentenced to twenty years on the rape count, while Conrad was sentenced to a seventeen-year term for rape. The trial court ordered that each defendant would serve his four terms consecutively.

Appellants Bish, Conrad and Botchuck each raise several issues concerning the sentences imposed by the trial court. Some of these questions are common to two of the appellants, while many issues are raised by only one party. Thus, the issues we shall consider in this opinion concern: (1) whether the trial court erred in using the victim's statement as the sole source of the factual basis for the guilty pleas; (2) whether the information was defective and at variance with the sentences imposed; (3) whether the trial court erroneously ordered that the sentences be served consecutively; (4) whether the trial court erroneously considered the commission of all of the crimes in increasing the sentence for each crime; (5) whether the trial court erred in admitting a doctor's affidavit as evidence in the sentencing hearing; (6) whether the trial court erred in admitting certain testimony during the sentencing hearing; (7) whether the trial court erred in denying a motion to correct error based on an allegedly uncontradicted affidavit; and (8) various challenges to findings made by the trial court concerning aggravating and mitigating circumstances and to the reasonableness of the sentences imposed.

The charges against Bish, Conrad and Botchuck arose out of the robbery and repeated sexual assaults perpetrated on a young woman they abducted. The record reveals that the victim, C. S., was walking alone in the town of Ligonier in the early morning hours of May 21, 1978. Bish, Conrad and Botchuck had been consuming alcohol for several hours and were driving around in Botchuck's automobile. They drove past C. S., and asked her if she wanted a ride. When she declined their offer several times, Botchuck grabbed her and

forced her into the back seat of the automobile. Conrad was driving at this time. Once inside the car, C. S., asked to be taken to a telephone booth or to her home. These requests went unheeded. A short time later, Botchuck crawled into the back seat area and forced C. S., to disrobe, squeezing her neck when she refused. Bish held C. S.'s hands while Botchuck disrobed. Botchuck then attempted to have sexual intercourse with her. Bish then climbed into the back seat and forced C. S., to have sexual intercourse with him; at the same time, Botchuck was forcing her to perform oral sex on him.

Shortly thereafter, the car stopped at a gravel pit. The driver, Conrad, then climbed into the back seat and attempted to have sexual intercourse with the victim. When his efforts proved unsuccessful, he forced her to perform oral sex on him. Bish, Conrad, and Botchuck kept C. S. confined for the next few hours, continuing their sexual assaults, some of which occurred simultaneously. They also threatened, beat, and slapped her whenever she resisted. The evidence indicated that, at some point, two of the defendants pressed with their hands on the sides of C. S.'s head, causing her to hear a loud noise and then lose consciousness.

C. S., was discovered unconscious at the edge of a road in Elkhart County, Indiana, with her underwear placed over her head and her pants tied around her neck. She was taken to Elkhart General Hospital, where she arrived in a semi-conscious and incoherent condition. The entire episode lasted approximately four hours.

## I.

Appellant Donald Conrad argues the trial court failed to follow the proper procedure in accepting his guilty pleas. Specifically, Conrad contends the trial court erred when it accepted and used the victim's statement as the sole source for the necessary factual basis. Ind.Code § 35–4.1–1–4(b) (Burns 1979 Repl.) provides:

"The court shall not enter judgment upon a plea of guilty unless it is satisfied from its examination of the defendant that there is a factual basis for the plea."

The record reveals that the trial court conducted a lengthy examination of the three defendants to determine that their guilty pleas were entered knowingly, voluntarily and intelligently. Thereafter, the court directed the prosecutor to present evidence of a factual basis to support the guilty pleas. The victim, C. S., testified in detail as to what the defendants had done to her during this incident. The court then determined that the arrangements proposed concerning the guilty pleas were agreeable to the victim, her parents and the investigating officer in the case. Thereafter, the following exchange occurred:

The Court:

"I am going to ask you, Mr. Conrad, Mr. Bish and Mr. Botchuck, to tell me all of the things that happened here. The information in my opinion as recited by the witness, . . ., is complete on the elements for me to find a factual basis. Mr. Diggins, do you find that there is anything that the Court has not received sufficient to find a factual basis thus far?

Mr. Diggins: [counsel for defendants Conrad and Bish]: No, Your Honor.

The Court: Mr. Hearn?

Mr. Hearn: [counsel for defendant Botchuck]: I'm not quite sure I understand the question.

The Court: Do you think there's anything lacking the Court should hear to find a factual basis?

Mr. Hearn: No.

The Court: I will then give your clients the options of telling me now in their own words what happened or if they would like to wait for the date of sentencing.

Mr. Hearn: We would elect to wait till sentencing, Your Honor.

The Court: Mr. Diggins?

Mr. Diggins: Mr. Conrad and Mr. Bish also would defer until that time, Your Honor.

The Court: Now, Mr. Conrad, Mr. Bish and Mr. Botchuck, you have heard these

witnesses. You have heard them ask me to accept these pleas, and you have heard them testify about matters for me to find a factual basis. I now renew my question. Do you still want to plead guilty to these four charges, Mr. Conrad?

*Mr. Conrad* : Yes.

*The Court* : Mr. Bish?

*Mr. Bish* : Yes, sir.

*The Court* : And Mr. Botchuck:

*Mr. Botchuck* : Yes."

Record at 616–18.

Thus, the record shows that the trial court began to conduct an examination of each of the defendants to determine that a factual basis existed. In response to a question from the court, counsel for each defendant acknowledged that the victim's testimony presented a complete factual basis. The court then stated that he wanted each defendant to explain in his own words what had occurred; however, the court gave them the option of waiting until the sentencing hearing to make their statements. The defendants, by counsel, chose to wait until the time of sentencing, and the court thereafter accepted the guilty pleas and entered judgments of convictions accordingly.

█ Clearly, then, appellant Conrad has waived the issue. While the statute requires, and better practice suggests, that the defendant himself should be examined before judgment is entered on a guilty plea, in this case the defendants, including Conrad, expressly and unequivocally waived this requirement. Appellant Conrad does not argue that this omission rendered his guilty pleas involuntary or unknowing, nor does he argue that the court established no factual basis to support his guilty pleas. In light of the defendants' deferral and the clear and unchallenged factual basis which was presented by the victim's testimony before judgment was entered, we do not believe the trial court committed reversible error in this case. *Cf. Collins v. State,* (1979) Ind.App., 394 N.E.2d 211.

## II.

Appellant Steven Botchuck argues the information is defective and at variance with the sentences imposed. He claims that he was charged with class D confinement, class B rape, class B unlawful deviate conduct, and class C robbery. However, he asserts, he was sentenced for class B confinement, class A rape, class A unlawful deviate conduct, and class A robbery. He now argues the sentences should be modified to conform to the charging instruments.

█ Botchuck's argument is flawed in several respects. First, he was sentenced for three class B felonies, rape, deviate conduct and robbery, and one class D felony, confinement. Thus, the record does not support his assessment of the sentences imposed by the court. Second, he entered knowing, voluntary, and intelligent guilty pleas to offenses of the same respective classes under which he was sentenced. At the time he entered the guilty pleas, Botchuck acknowledged that, by pleading guilty to the various charges, he was admitting the existence of each offense. Botchuck raised no question concerning the alleged variances at that time. In addition, at the time the sentences were pronounced, the trial court clearly informed Botchuck, as well as Bish and Conrad, that he was being sentenced for class D confinement, class B rape, class B unlawful deviate conduct, and class B robbery. However, Botchuck entered no objection of any sort at the time the trial court announced the various sentences. For these reasons, Botchuck also waived any error concerning the alleged variances between the information and the sentences imposed.

## III.

The next issue presents various attacks on the trial court's decision that each defendant should serve the sentences on a consecutive basis, rather than concurrently. Appellants Botchuck and Bish argue that consecutive sentences in this case would punish them twice for the same offense and thus subject them to double jeopardy. Appellant Conrad, on the other hand, contends

the trial court considered factors other than those to which it was statutorily confined in ordering consecutive sentences. Conrad also claims the factors relied on by the court are not supported by the record. As we shall explain, we find no constitutional error or abuse of discretion in the ordering of consecutive sentences in this case.

Appellant Botchuck challenges the trial court's consecutive sentences order on double jeopardy grounds. He asserts that the elements of the various offenses are "extremely similar." Botchuck also argues that the facts from which these offenses arose are "virtually the same," having occurred during a short period of time. Thus, he claims, these offenses are, for double jeopardy purposes, part of the same, continuing transaction, and therefore not appropriate subjects for consecutive sentences.

■ We explicitly rejected this method of analysis concerning double jeopardy cases in *Elmore v. State*, (1978) 269 Ind. 532, 382 N.E.2d 893. Our opinion in *Elmore* noted that the right against double jeopardy prohibits, among other things, multiple punishments for the same offense. We further explained:

"The focus of a proper double jeopardy analysis must be on whether or not the offenses to be prosecuted and punished are the same, and *not whether the offenses spring from the same act or operative circumstances.*

.      .      .      .      .

The ultimate focus is on the identity of the offenses, not on the identity of their source."

*Id.* at 539, 382 N.E.2d at 897 (emphasis added), *quoted in Inman v. State*, (1979) Ind., 393 N.E.2d 767, 771. Thus, the test to be applied is that established by the United States Supreme Court in *Blockburger v. United States*, (1934) 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309, and adopted by this Court in *Elmore v. State, supra,* 269 Ind. at 534, 382 N.E.2d at 895:

"[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to

determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not."

*See Inman v. State, supra.* If this test is satisfied, the prohibition of double jeopardy is not violated, even if there is a substantial overlap in the evidence to prove both offenses. *Iannelli v. United States*, (1975) 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 1293–94, 43 L.Ed.2d 616, 627; *Inman v. State, supra; Elmore v. State, supra.*

■ Turning to the case now before us, there are plainly four distinct offenses involved. Ind.Code § 35–42–3–3 (Burns 1979 Repl.) defines confinement:

"A person who knowingly or intentionally:

(1) confines another person without his consent; or

(2) removes another person, by fraud, enticement, force, or threat of force, from one place to another;

commits criminal confinement, a Class D felony. However, the offense is a Class C felony if the other person is under fourteen (14) years of age and is not his child, and a Class B felony if it is committed while armed with a deadly weapon."

Section 35–42–4–1 defines rape:

"(a) A person who knowingly or intentionally has sexual intercourse with a member of the opposite sex when:

(1) the other person is compelled by force or imminent threat of force;

(2) the other person is unaware that the sexual intercourse is occurring; or

(3) the other person is so mentally disabled or deficient that consent to sexual intercourse cannot be given;

commits rape, a Class B felony. However, the offense is a Class A felony if it is committed by using or threatening the use of deadly force, or while armed with a deadly weapon.

(b) This section does not apply to sexual intercourse between spouses, unless a petition for dissolution of the marriage is pending and the spouses are living apart."

Unlawful deviate conduct is defined in § 35–42–4–2 as follows:

"(a) A person who knowingly or intentionally causes another person to perform or submit to deviate sexual conduct when:

(1) the other person is compelled by force or imminent threat of force;

(2) the other person is unaware that the conduct is occurring;

or

(3) the other person is so mentally disabled or deficient that consent to the conduct cannot be given;

commits criminal deviate conduct, a Class B felony. However, the offense is a Class A felony if it is committed by using or threatening the use of deadly force or while armed with a deadly weapon.

(b) A person who knowingly or intentionally causes penetration, by an object or any other means, of the sex organ or anus of another person when:

(1) the other person is compelled by force or imminent threat of force;

(2) the other person is unaware that the conduct is occurring;

or

(3) the other person is so mentally disabled or deficient that consent to the conduct cannot be given;

commits criminal deviate conduct, a Class B felony. However, the offense is a Class A felony if it is committed by using or threatening the use of deadly force, or while armed with a deadly weapon."

Finally, § 35–42–5–1 defines robbery:

A person who knowingly or intentionally takes property from another person or from the presence of another person:

(1) by using or threatening the use of force on any person; or

(2) by putting any person in fear;

commits robbery, a Class C felony. However, the offense is a Class B felony if it is committed while armed with a deadly weapon, and a Class A felony if it results in either bodily injury or serious bodily injury to any other person."

A reading of these statutes reveals that each of these offenses unquestionably requires proof of at least one element which the other offenses do not. Thus, for double jeopardy purposes, none of these offenses is the same as any of the others. *Iannelli v. United States, supra; Blockburger v. United States, supra; Inman v. State, supra; Elmore v. State, supra.* Therefore, there was no constitutional barrier to sentencing appellants for each of the offenses to which they had entered guilty pleas. Likewise, there was no double jeopardy prohibition against ordering that these sentences be served consecutively. As we stated in *Merrifield v. State,* (1980) Ind., 400 N.E.2d 146, 151: "Appellant had no constitutional right to have his sentences run concurrently."

Appellant Bish also challenges the ordering of consecutive sentences on double jeopardy grounds. Bish asserts the trial court increased the penalty for each offense on the basis of a consideration of the totality of circumstances. He contends the court again analyzed and weighed the totality of circumstances in deciding to order that the sentences be served consecutively. Thus, he claims, using the same factors in this fashion amounts to an impermissible "double punishment." He concludes that the imposition of consecutive sentences in this manner was improper.

Bish's argument contains a fundamental flaw. For purposes of argument, we accept as true his assertion that the same factors were used in persuading the trial court to enhance the sentences for each offense and to order that those sentences be served consecutively. However, the Double Jeopardy Clause has not thereby been brought into play. The imposition of consecutive sentences is not a second enhancement of the penalties to be served for each offense; such a decision obviously affects only the arrangements and times for serving those sentences. While it may be true that the net result of this decision may be an increase in the total period of incarceration, that increase will have occurred because the sentences were served one after the other, not because the defendant was

punished twice for the same offense. *See Griffith v. State,* (1980) 415 N.E.2d 60, 69–70; *Merrifield v. State, supra.* The trial court's order that each defendant serve his sentences consecutively did not violate state or federal proscriptions against double jeopardy.

Next, appellant Conrad argues the trial court failed to follow the appropriate statutory guidelines in reaching its decision concerning the imposition of consecutive sentences. Conrad claims the statutory sentencing scheme contemplates consideration of specific enumerated factors, to the exclusion of all others, in determining the consecutive-concurrent question. West's Ann.Ind. Code § 35–4.1–4–7(c) (1978) (Burns § 35–50–1A–7(c) (1979 Repl.)) lists several factors which the trial court may consider "as aggravating circumstances or as favoring imposing consecutive terms of imprisonment." Subsection 35–4.1–4–7(d) states that the criteria listed in subsection (c) "do not limit the matters that the court may consider in determining the sentence." Thus, while subsection (c) does specifically apply to the court's decision concerning consecutive sentences, subsection (d) does not directly refer to that particular sentencing determination.

Conrad argues, in fact, that subsection (d) applies only to the trial court's decisions concerning aggravating and mitigating circumstances and the imposition of the sentence for a particular offense. He contends that the legislature's failure to refer in subsection (d) to the consecutive-concurrent determination reflects an intent to limit the trial court to a consideration of those factors listed in subsections (b) and (c) in deciding whether to impose consecutive sentences. Thus, Conrad concludes this statutory scheme was designed to prevent the finding of aggravating circumstances *and* the imposition of consecutive sentences in the same case. Conrad further asserts that, contrary to his view of the statute's meaning, the trial court here based the order of consecutive sentences on factors other than those listed in subsection (c).

▆ We disposed of a similar argument in *Inman v. State,* (1979) Ind., 393 N.E.2d

767. In that case, the appellant argued that § 35–4.1–4–7 does not permit the court to use the same factors to increase the sentence through a finding of aggravating circumstances and to impose consecutive sentences. We answered this contention in this fashion:

"We do not interpret the statutory language [of § 35–4.1–4–7(c)] to mean that the alternatives are mutually exclusive. The court may, upon consideration of relevant facts and information, increase the standard penalties, impose consecutive sentences or both."

*Id.,* 393 N.E.2d at 772. *See Warfield v. State,* (1981) Ind., 417 N.E.2d 304, 305; *Mott v. State,* (1980) Ind., 402 N.E.2d 986. Therefore, just as we held above that there is no constitutional prohibition against using the same factors to enhance the sentence and to impose consecutive sentences, we now hold there is no statutory prohibition against such a sentencing technique.

▆ Moreover, we do not read § 35–4.1–4–7(c) and (d) as limiting those factors which the court may consider in deciding whether to order consecutive sentences. Section 35–4.1–4–7(c) states that the court *may* consider certain listed factors in making this decision. This language by itself would suggest certain flexibility in making this decision. Further, Ind.Code § 35–50–1–2 (Burns 1979 Repl.) states:

"(a) Except as provided in subsection (b) of this section, the court shall determine whether terms of imprisonment shall be served concurrently or consecutively.

(b) If a person commits a crime:

(1) after having been arrested for another crime; and

(2) before the date he is discharged from probation, parole, or a term of imprisonment imposed for that other crime; the terms of imprisonment for the crimes shall be served consecutively, regardless of the order in which the crimes are tried and sentences are imposed."

Thus, this statute grants the trial court discretion in making this decision, subject to

the limitations set forth in subsection (b) of this section. *Merrifield v. State*, (1980) Ind., 400 N.E.2d 146, 151; *Mott v. State*, (1980) Ind., 402 N.E.2d 986, 988; *Inman v. State*, (1979) Ind., 393 N.E.2d 767, 772. When deciding whether to impose consecutive sentences, the trial court does not deviate from the statutory procedure or abuse its discretion in considering relevant factors in addition to those listed in § 35–4.1–4–7(c).

Appellant Conrad argues alternatively that the trial court imposed consecutive sentences upon him on the basis of listed factors which, he claims, do not apply to him or are not supported by the record. Therefore, he claims, he was denied due process by the trial court's imposition of consecutive sentences.

■ At the outset, we must remember our standard of review in cases of this type. Under Ind.R.App.Rev.Sent. 2:

"(1) The reviewing court will not revise a sentence authorized by statute except where such sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender.

(2) A sentence is not manifestly unreasonable unless no reasonable person could find such sentence appropriate to the particular offense and offender for which such sentence was imposed."

In this case, the imposition of consecutive sentences was plainly allowed by statute. Ind.Code § 35–50–1–2, *supra*. Thus, our review is limited to a determination of whether the imposition of consecutive sentences in this case was manifestly unreasonable. As discussed above, these offenses arose out of the confinement, robbery and repeated sexual attacks on a young woman by three men over a period of several hours. As Conrad points out, the degree and extent of participation varied among the three defendants. However, the evidence reveals this was clearly a function of the presence of *three* defendants, of their "taking turns,"and, with respect to Conrad, of certain physical inabilities, and was *not* attributable to any of the defendants' unwillingness to become involved or their concern for the mental and physical welfare of the victim. In ordering the consecutive sentences, the court recognized, among other things, that several different offenses had been committed by each defendant, sometimes in simultaneous fashion. The court also found that these offenses were "heinous, despicable, atrocious and disgusting." The record clearly shows that Conrad was an active and willing, if sometimes unable, participant in the night's events. He fully admitted his involvement and assistance in the various crimes which were committed, and the record reveals no instance in which Conrad attempted to prevent any of the acts of Bish or Botchuck or dissuade them in any way. The trial court's findings and conclusions are plainly supported by the record, and the court was fully justified in ordering Conrad to serve the four sentences on a consecutive basis, and in doing so did not subject Conrad to a manifestly unreasonable punishment nor deny him due process. *See Merrifield v. State, supra.*

### IV.

Appellant Bish presents an additional double jeopardy attack on the sentences imposed on him. Bish argues that the trial court enhanced the sentence for each of the four convictions after considering his commission of all four crimes. He posits that this method of applying the aggravating circumstances results in an improper "double punishment" for each crime.

■ This argument presents a question very similar to Bish's argument above concerning double jeopardy in the imposition of consecutive sentences. We held in Issue III, *supra*, that double jeopardy is not violated when the trial court uses certain aggravating factors to justify an enhanced sentence and to justify the imposition of consecutive sentences. In the present situation, the trial court assessed certain aggravating factors in enhancing the sentence to be served for each offense. The factoring in of the aggravating circumstances does not doubly punish the defendant; these circumstances merely justify an increase in the single sentence the defendant receives

for *each* offense. Thus, while the punishment for each offense may be enhanced by the same factors, the defendant has nevertheless not received multiple punishments for the same offense, and therefore has not been subjected to double jeopardy. *Elmore v. State, supra.* This issue is without merit.

### V.

■ Appellants Botchuck and Conrad argue the trial court erred in admitting a doctor's affidavit into evidence at the sentencing hearing. The affidavit in question was sworn to by a physician, Dr. Claude Hartman, who examined the victim at the hospital to which she was taken after the incident. The affidavit generally described the victim's physical and emotional state at the time of the examination. Conrad's challenge to the affidavit is waived, however, by his failure to raise this issue in his motion to correct errors. *E. g., Murphy v. State,* (1977) 267 Ind. 184, 187, 369 N.E.2d 411, 413.

■ Appellant Botchuck argues the trial court placed too much emphasis on the physician's report in deciding the sentences to be imposed. This assertion is simply not supported by the record. The substance of the matters presented in the affidavit concerning the victim's physical and emotional condition is also found in the presentence investigation report filed with the court. The record shows that the victim was threatened, beaten and generally subjected to excessive violence during these acts. At one point, she lost consciousness due to pressure being applied to the sides of her head. Further, the evidence clearly reveals that the victim has suffered severe emotional distress as a result of this incident. Unquestionably these factors were properly considered by the trial court. *See* West's Ann.Ind.Code § 35–4.1–4–7(b)(1) (1978) (Burns § 35–50–1A–7 (1979 Repl.)); Ind.R. App.Rev.Sent. 2.

■ Appellant Botchuck also contends this affidavit should have been made a part of the presentence report, under Ind.Code § 35–4.1–4–10. While we agree that an affidavit of this nature could properly be included in the presentence report, such inclusion is not mandatory. In determining the appropriate sentence, the court may consider matters outside the presentence report. *See* § 35–4.1–4–7(d). This affidavit was tendered by the prosecutor shortly before the start of the sentencing hearing. The record reveals that the trial court announced before the sentencing hearing began that he would consider this affidavit, along with numerous other documents, in determining the sentences. Thus, appellant had an opportunity to refute or explain the affidavit's contents, which, as we noted earlier, were generally repeated and discussed in other documents and evidence made available to the defendants. *See* § 35–4.1–4–13. The trial court did not err in accepting and considering the affidavit, nor in failing to include the affidavit in the presentence report.

### VI.

Appellants Botchuck and Conrad next assert the trial court erred in admitting certain testimony at the sentencing hearing. David Stuber testified that he was an ambulance driver with ninety-one hours of training as an emergency medical technician. Stuber stated that he discovered the victim lying unconscious near the edge of the road. He further described her physical condition and appearance, and explained that, from his observation, she appeared to be in shock and near death. Stuber and his associate administered emergency medical treatment to the victim and transported her to Elkhart General Hospital.

Appellants now present two objections to Stuber's testimony. They argue that there was no showing of his qualifications to draw conclusions as to whether the victim was near death. Further, appellants assert the statutory sentencing guidelines do not permit consideration of the victim's condition as an aggravating circumstance, and that Stuber's testimony was, therefore, irrelevant.

■ We hold the trial court properly admitted Stuber's testimony. First, the

record does not reflect that any of the defendants objected to his appearance as a witness. Second, none of the defendants objected in any way to Stuber's opinion that the victim was near death when he discovered her. Third, defense counsel had a full opportunity to cross-examine Stuber and challenge his qualifications and the bases for his opinions concerning the victim's condition. In fact, counsel for Conrad and Bish elicited from Stuber. that the symptoms of a drug overdose case are similar to those displayed by the victim. Finally, we think testimony of this sort was highly relevant. The defendants were being sentenced for confinement, rape, unlawful deviate conduct and robbery. While the physical condition of the victim is not specifically listed as an aggravating circumstance in § 35–4.1–4–7(c), this factor is obviously related to "the nature and circumstances of the crime[s] committed," and is, therefore, an aspect of the case which the trial court may properly consider. *See* § 35–4.1–4–7(a). Stuber's testimony was properly admitted, and this issue is without merit.

### VII.

Appellant Botchuck argues the trial court erred in denying his motion to correct error. Botchuck filed an affidavit in support of his motion, asserting that he was heavily intoxicated at the time of the offenses, that he did not threaten the victim, and that, during the offenses, he did not have in his possession a weapon which could cause bodily harm. The affidavit further asserted that Botchuck did not choke or strike the victim, and that he had informed the prosecutor that a fourth person was involved in these crimes. Botchuck now argues that, because the prosecutor filed no counter-affidavit denying these allegations, they must be taken as true. Thus, he claims, since his assertions run counter to the trial court's findings concerning aggravating circumstances, his sentence should be modified.

This argument is without merit. Even accepting as true Botchuck's claim that the prosecutor filed no counter-affidavit challenging the allegations in his affida-

vit, neither the trial court nor this Court is thereby bound to consider these allegations as true or as uncontradicted. The record shows that these allegations were included in Botchuck's version of the events as recorded in the presentence report and in his testimony. The affidavit contained no allegations or assertions which were not already before the trial court, and the court indicated that it weighed all of the evidence in reaching its sentencing decisions. *Cf. In re Marriage of Myers*, (1979) Ind.App., 387 N.E.2d 1360, 1362. Botchuck's version of the events was, in fact, contradicted by the presentence report's official version of the events and by the evidence disclosed at the sentencing hearing. *Cf. Lagenour v. State*, (1978) 268 Ind. 441, 447, 376 N.E.2d 475, 481; *Scharbrough v. State*, (1968) 249 Ind. 316, 322, 232 N.E.2d 592, 596. Thus, Botchuck's affidavits presented no new allegations which stood unanswered or uncontradicted due to the prosecutor's failure to file a counter-affidavit. *See Scharbrough v. State, supra*. There was, therefore, nothing to be gained by the prosecutor's filing of a counter-affidavit. Botchuck's affidavit and any counter-affidavit would have merely renewed arguments concerning the facts of the case. For these reasons, the trial court was not bound to accept Botchuck's assertions as true, and did not err in denying his motion to correct errors. *See Finger v. State*, (1973) 260 Ind. 148, 151–52, 293 N.E.2d 25, 26–27.

### VIII.

Finally, all three appellants present various challenges to the length of the sentences they received. In differing forms, they allege the trial court erred in finding certain aggravating circumstances to be present, in finding that the aggravating circumstances outweighed the mitigating circumstances, and in imposing what they consider to be manifestly unreasonable sentences. Thus, appellants request that this Court adjust their sentences or remand the case to the trial court for the imposition of more appropriate sentences.

To properly dispose of this issue, we must again be mindful of our standard of review concerning alleged errors in sentencing. Our applicable rule states that we will not adjust a sentence which is authorized by statute and which is not manifestly unreasonable in light of the nature of the offense and the character of the offender. Moreover, a sentence is not "manifestly unreasonable" if any reasonable person could find the sentence to be appropriate to the particular offense and offender. Ind.R. App.Rev.Sent. 1, 2. This Court has also held that, when the trial court increases or decreases the sentence, or orders the sentences to be served consecutively, the record should disclose the factors considered by the court to constitute aggravating or mitigating circumstances. *Gardner v. State*, (1979) Ind., 388 N.E.2d 513, 517. Thus, if the sentences imposed were authorized by statute, if those sentences are not manifestly unreasonable, and if the record discloses the trial court's finding of aggravating and/or mitigating circumstances, this Court will not revise or strike down the sentences in question. We are not bound to conduct a *de novo* review of the sentencing hearing and assess or reweigh the trial court's findings and conclusions regarding aggravating and mitigating circumstances.

Turning to the facts of the case now before us, appellants Bish, Conrad and Botchuck each entered guilty pleas for the offenses of class D confinement, class B rape, class B unlawful deviate conduct, and class B robbery. All of these offenses are felonies. Ind.Code § 35–50–2–5 (Burns 1979 Repl.) states:

"A person who commits a class B felony shall be imprisoned for a fixed term of ten (10) years, with not more than ten (10) years added for aggravating circumstances or not more than four (4) years subtracted for mitigating circumstances; in addition, he may be fined not more than ten thousand dollars ($10,000)."

In addition, § 35–50–2–7 states:

"(a) A person who commits a class D felony shall be imprisoned for a fixed term of two (2) years, with not more than two (2) years added for aggravating circumstances; in addition, he may be fined not more than ten thousand dollars ($10,-000).

(b) Notwithstanding subsection (a) of this section, if a person has committed a class D felony, the court may enter judgment of conviction of a class A misdemeanor and sentence accordingly. The court shall enter in the record, in detail, the reason for its action whenever it exercised the power granted in this subsection."

Further, as we explained in Issue III, *supra*, § 35–50–1–2 provides that the trial court may impose consecutive sentences. Bish, Conrad and Botchuck acknowledged that by entering their guilty pleas, they were subject to being imprisoned for the terms provided for in these statutes. They further explicitly recognized that the court, in its discretion, could order that the sentences be served consecutively. Thereafter, the court imposed the sentences listed above. There is no question that these sentences are within the allowable limits, and are, therefore, "authorized by statute." Ind.R.App.Rev. Sent. 1.

We must next determine whether the trial court followed the proper statutory procedures and whether the sentences are manifestly unreasonable in light of the nature of the offenses and the character of the offenders. The trial court ordered a presentence investigation report prepared concerning each defendant, and the record reveals that each defendant received a copy of the report sufficiently in advance of the sentencing hearing to be able to formulate responses to it, and was given an opportunity at the sentencing hearing to make those responses. *See* §§ 35–4.1–4–10, 35–4.1–4–13 (Burns §§ 35–50–1A–10, 35–50–1A–13).

The trial court carefully listed on the record his finding as to aggravating and mitigating circumstances. Concerning appellant Bish, the court specifically found that the aggravating circumstances outweighed the mitigating circumstances, and warranted an enhanced sentence for each offense except robbery. The court found

that Bish had a history of juvenile criminal activity, and that he was in need of correctional or rehabilitative treatment best provided in a penal facility. Further, the court determined that imposition of a reduced or suspended sentence would have depreciated the seriousness of the crimes, that Bish had not made may sort of restitution to the victim for robbery, and that his character and attitude indicated that he is likely to commit another offense. The trial court further noted, *inter alia*, that Bish participated in the crimes and did nothing to stop Conrad's and Botchuck's participation in these events. As explained above, Bish received sentences totalling fifty-four years.

The trial court also found, with respect to appellant Conrad, that the aggravating circumstances outweighed the mitigating circumstances and justified an increase on each of the four sentences. The court found the same aggravating circumstances pertaining to Conrad that were present in Bish's case. The court also noted that Conrad had recently violated conditions of federal parole. Concerning the particular facts of these offenses, the court noted that Conrad drove the automobile while Bish and Botchuck committed various sexual offenses on the victim, and that Conrad forced her to perform oral sex under the threat of injury. Conrad also shared in the commission of the robbery by purposely discarding the victim's wrist watch and photographs she was carrying. The trial court imposed sentences on Conrad totalling sixty-one years.

Regarding appellant Botchuck, the trial court also found that the aggravating circumstances outweighed the mitigating circumstances and justified enhancing the sentences for each of the four offenses. In part, the court found the same aggravating circumstances it had found concerning Bish and Conrad. The court also noted that Botchuck had recently been released from a prison work-release program, and that he had been married only about one week before committing these offenses. The trial court further noted, relative to the circumstances of these offenses, that Botchuck helped commit these offenses and did noth-

ing to prevent Bish and Conrad from perpetrating the offenses as well. In addition, Botchuck threatened the victim several times with additional bodily harm, and, during the commission of vaginal intercourse and oral sex, threatened to cut the victim into little pieces and send her to her parents. Botchuck received sentences totalling sixty-four years.

As explained above, the trial court imposed sentences which are clearly authorized by statute. *See* Ind.Code §§ 35–50–1–2, 35–50–2–5, 35–50–2–7, *supra.* The record further reflects full compliance with the necessary sentencing hearing procedures. West's Ann.Ind.Code § 35–4.1–4–1 *et seq.* (1978) (Burns § 35–50–1A–1 *et seq.* (1979 Repl.)). Moreover, the findings regarding aggravating and mitigating circumstances were completely appropriate under § 35–4.1–4–7(a–d), and were clearly justified by the evidence presented to the trial court. In light of the nature and circumstances of these offenses and the character of these offenders, the sentences imposed were plainly not manifestly unreasonable. Likewise, the trial court was fully justified in ordering that each defendant serve his sentences consecutively.

Finding no reversible error, we affirm the judgment of the trial court.

GIVAN, C. J., and HUNTER, J., concur.

DeBRULER, J., concurs and dissents with separate opinion in which PRENTICE, J., concurs.

DeBRULER, Justice, concurring and dissenting.

Pursuant to the sentencing statute setting forth criteria for sentencing, the sentencing judge is required to go beyond the quantum of grossness of the offense committed, into the separate realm of the prior criminal record, character, and condition of the individual defendant. Ind.Code § 35–50–1A–7. The sentencing judge did so here, finding that appellant Bish had only a prior juvenile record with no prior criminal activity, that Botchuck had a history of

**622**

criminal activity, and that Conrad had a history of criminal activity and was a parolee. With regard to the confinement and sex offenses, the judge increased the sentences to the maximum limit and ordered them served consecutively as to each offender, thereby treating all three alike. In light of the absence of criminal activity in appellant Bish's past, and the fact that all offenses occurred within a period of but four hours, it is manifestly unreasonable to permit aggravating circumstances to enhance his sentences for these offenses to the point where they to no degree reflect this lack of past criminal activity.

Appellant Botchuck was ordered to serve the maximum term on all convictions including the one for the crime of robbery, and all sentences were ordered served consecutively. It is undisputed that he did not take or encourage the actual taking of the victim's property. Under such circumstance, and those including the decision to have all his sentences run consecutively and the shortness of time of the entire criminal episode, it was manifestly unreasonable to permit aggravating circumstances to enhance his sentence for the robbery to the point where it would to no degree reflect his more limited participation in commission of that crime. Since there is no consensus on this Court that the sentences be revised to these ends I find no occasion to make a specific recommendation.

As to appellant Conrad, I find nothing manifestly unreasonable about the sentences he received.

In all other matters I concur in the opinion of the Court.

PRENTICE, J., concurs.